Henry Clay Greenberg, J.
This proceeding was instituted by the petitioners pursuant to article 78 of the Civil Practice Act. They seek an order compelling the Comptroller of the *405 City of New York to pay to them prevailing wage claims for the period from December 21, 1955 to various dates in 1956 more particularly set forth in Schedule 2 of the petition in the column marked “Period of Non-Payment”. On the return of this application, issues were raised which were directed by Special Term to be tried. Those issues were tried before me, without a jury, and upon the papers, evidence and exhibits I make the following determination.
The petitioners are maintenance men employed by the City of New York. They are paid wages pursuant to section 220 of the Labor Law of the State of New York, which states: “ The wages to be paid for a legal day’s work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined. * * # It shall be the duty of the fiscal officer [Comptroller] * * * to ascertain and determine the schedules of * * * wages to be paid ”. (All matter hereinafter emphasized or in brackets is supplied.)
For many years it has been the practice for maintenance men to file prevailing wage claims with the Comptroller and such claims have been disposed of either by a determination by the Comptroller or a settlement, each, however, ending the claims as of a particular date. It has been axiomatic in this field of law and procedure incidental thereto that no employee gets paid a retroactive prevailing wage claim unless he files a prevailing wage claim pursuant to section 220 of the Labor Law. Those who do file are then entitled to differential in pay (back pay) and said payment only from the date of the filing of the complaint to the dates of the determination. Those employees who do not file a wage claim are only entitled to the new prevailing wage rate from the date of the determination prospectively. "When this determination by the Comptroller is then made, all claims on file terminate and immediately thereafter the city employees file new claims so that any subsequent determination would be retroactive to the filing date.
The record now before me shows that approximately 1,500 maintenance workers, including the petitioners herein, filed wage claims which came on for disposition at a hearing held on December 21, 1955. Petitioners filed their claims on the dates indicated in Schedule II, claim A, of the petition. Numerous conferences and hearings were held regarding these claims by all aggrieved parties or their representatives. This procedure must be followed prior to the Comptroller’s making a determination. The petitioners here were included in all those claims and conferences and appeared either personally or by counsel *406 or by an authorized agent. On December 9, 1955, a conference was held where the procedure, which was to be followed with respect to these claims, was outlined so as to avoid delay and litigation. The outline prescribed was incorporated in the order of the Comptroller of December 21, 1955. A compromise settlement was then proposed and accepted by a large segment of employees. However, because many other employees did not accept the proposed settlement, the hearing and matters involved as to these objectants was “severed” as to them. Thus, as of December 21, 1955, the prevailing wage claims of those who accepted the compromise settlement were then terminated and new “ live ” claims had to be filed for them to protect their future interests. Hoioever, as to those claimants who did not accept the compromise settlement (including petitioners here) the severed proceedings were continued. and further hearings thereon were held on June 15, September 25, and December 11,1956.
On December 11, 1956 the ‘ ‘ severed ’ ’ proceedings affecting the petitioners were marked “off calendar”. Nevertheless, when the hearings of December 21, 1955 were formalized in the Comptroller’s determination of March 20,1956, the Comptroller not only included all those who had accepted the compromise settlement but also those “ who failed to object thereto ”. The Comptroller then included the petitioners in the list of those who did not “ object thereto ” and deemed their claims dead as of December 21, 1955. Petitioners argue and assert that they never authorized such action by the Comptroller, that they never had any knowledge that they must ‘1 object ” or be considered as having accepted, that they never knew their names were in such listing and had assumed that their claims were still within those in the “ severed ” and continued proceedings. They therefore argue strenuously that their “ severed ” claims were continued as ‘ ‘ live ’ ’ claims. As a precautionary measure, petitioners did file new claims between April, 1956 and September, 1956 as indicated in Schedule II, claim B of the petition. The “severed” proceedings were complicated in that there were two different groups of claimants who instituted legal proceedings — the Dawson group and the Kennedy group — contending that the Comptroller could not offer the compromised rates to those who accepted and refuse them to those who continued in the “severed” proceedings. In the meantime, all claimants in the severed proceedings requested the Comptroller to take evidence in support of a surveyed and determined prevailing rate which they contended would be higher than the rates offered in compromise. The courts sus *407 tained the right of the Comptroller to offer a compromise rate to acceptors and to refuse it to nonacceptors. During this period from March, 1956 to August, 1957, the Comptroller held hearings and concluded another period of wage claims ending on August 21, 1957. These claims were paid retroactively only to the date of the filing of the second Labor Law complaint.
However, without further evidence concerning a true prevailing wage rate being offered in the “ severed ” proceedings, those “severed” proceedings, as hereinbefore stated, were “ marked off” the Comptroller’s calendar on December 11, 1956. Meanwhile, in view of the delays, the petitioners and others in the severed proceedings began in November, 1956 to accept the Comptroller’s determination for the period ending December 21, 1955. The date of each acceptance is set forth in the last column of petitioner’s Schedule II, without further repetition here. The payments made by the City of New York thereon were only to the period ending December 21, 1955, the end date of that determination. It is petitioner’s contention that their first claim remained as a “ live ” claim until the date of their acceptance since their claim had been kept alive until then as part of the ‘‘ severed ’ ’ proceeding. Since these dates of acceptance were all later in point of time and after petitioners had filed their second prevailing wage claim, petitioners argue that their first claim remained “ alive ” until the filing of their second claim. It is not disputed that their second claim was a ‘ ‘ live ’ ’ claim from the date of its filing. Thus petitioners conclude that they had a continuous ‘ ‘ live ’ ’ claim.
This is important and the crux of the instant proceeding because, when the Comptroller concluded the compromise hereinbefore stated for a second period ending August 21, 1957, petitioners’ claims were paid retroactively only to the date of the filing of the second claim and not to December 21, 1955, as would have been the case if the Comptroller recognized the continuing validity of the first claim as being part of the severed proceedings. Thus the Comptroller maintains that the petitioners’ first claim ended as of December 21, 1955 because they “ failed to object thereto ” and, in any event, that the acceptance of a check for the first period ending December 21, 1955, received by petitioners in late 1956 or early 1957, and the execution of a release at that time for the period ending December 21, 1955 preclude petitioners from claiming payment for the period from December 21,1955 to the date of their filing the second claim.
The question therefore posed on the issue presented is whether the first prevailing wage claim of the petitioners *408 remained “ alive” after December 21, 1955 to the date of the determination of the severed proceedings in late 1956 or early 1957, when petitioners signed a release and accepted payment of prevailing wages to December 21, 1955, the end date of the compromised rate.
Upon the entire record now before me, the exhibits and stenographic minutes of the trial and the issues presented, I have come to the ultimate conclusion that petitioners’ claim did remain alive by the “ severed ” proceedings. The petitioners were parties to the severed proceedings. That their claims remained alive is substantiated, in my opinion, by the minutes of the several hearings subsequently held. The minutes of the December 21, 1955 hearing show a specific severance of those who had accepted the compromise settlement from those who had not accepted. No claimant was required to “ object ” to the proposed settlement. In working out that settlement, the city’s representative in charge stated the terms thereof in seven proposed points as follows:
“ 1. That an acceptance of any stipulated rate and the payment thereof by the city would constitute a full release, in compromise and settlement of the issues between the City of New York and the complainants.
“ 2. That the discussion referred to a back pay settlement only, and that the stipulated rate is not intended to be considered a true prevailing rate, the stipulated rates being considered compromise and settlement rates.
‘ ‘ 3. That all complainants accepting the accord hereinabove described would be required to withdraw all objections presented by them in this proceeding.
‘ ‘ 4. That releases would be given to the city upon payment of the rate benefits stipulated upon.
“ 5. That all these agreements, reached are subject to the final approval of the Comptroller.
“ 6. That the discussions concerning stipulated rates and possible accord were not to be part of the record of these proceedings, and that the rights of those who failed to accept the stipulated rates would be reserved for them and that hearings would be continued on their behalf in full litigation of all their rights on the issues involved.
‘ ‘ 7. That the city intended to move for a severance of the proceedings in accordance with the above understandings so that the rights of all complainants who do not accept the stipulated rates would be fully preserved.” (Emphasis supplied.)
*409 By point 6, it may be readily observed, and the conclusion is unmistakable, that a mere failure of the affirmative act of accepting the settlement would include such persons as non-acceptors whose rights then “would be reserved for them” and thus protected “ and that hearings would be continued on their behalf in full litigation of all their rights on the issues involved”. No obligation on their part to further “ object ” was stated nor created. In fact, at page 5 of the same minutes we find provision was made for acceptance up to January 16, 1956 “ for those people who may desire to file an acceptance on or before January 16, 1956 ”. It was further stated “ that the proceedings with respect to those complainants who are accepting the rates today be closed as of this hearing”. Turning then to page 11 of said minutes of December 21, 1955 we there find the precise motion for severance made as follows: 1' and all those who have indicated or will indicate acceptance of the stipulated rates, be withdrawn from the record. Now will you make your ruling on that? * * * Motion is granted”. While some attorneys did offer to list those who objected to the settlement, the petitioners were not put on notice that they must formalize their objection. I find no obligation created in the minutes of the hearing on the position of the respective parties which required petitioners to further specifically “object”. Their objection and position were fully and completely expressed and reserved to them in the stipulated settlement and severed proceeding which reserved to them all their rights on the issues involved in further prospective continued hearings. The conclusion is obvious and inescapable that nonacceptors are in fact objectors.
Comparing the determination of March 20, 1956 against the minutes of the hearing of December 21, 1955,1 find no warrant in the latter minutes to sustain the March 20 determination to include those “who failed to object ” as acceptors. The minutes of December 21, 1955 set forth the terms of settlement. As hereinbefore indicated, the motion of the Corporation Counsel, in behalf of the city, separated those “ who accepted ” and severed the proceeding as to those who had not accepted. This motion was granted without qualification. No formal settlement term included as acceptors those who ‘ ‘ failed to object ”. I therefore find no warrant or justification for such a legal conclusion in the determination of March 20, 1956.
Petitioners urge that the inclusion of their names in the schedule annexed to respondent’s Exhibit II was without their authority, consent or knowledge; that they in fact objected to the compromised rate and participated in the severed proceed *410 ings. In this aspect their arguments have decided merit. Respondent presented no evidence of such authority. In the testimony before me, petitioners testified they attended and participated in the continued severed proceedings of June 15, 1956, September 25,1956 and December 11, 1956. Respondent’s witness so conceded.
The severed and continued hearings of June 15, September 25 and December 11, 1956 all show the continuing proceedings and desire of petitioners to have the respondent fix a surveyed and determined rate. This all established and was indicative of *‘ live ’ ’ complaints. While we have seen that many claimants accepted the proposed compromise of December 21, 1955, many others rejected same. The severed proceedings obviously were for the purpose as stated of leaving future hearings to determine all the issues involved in petitioners’ claims. Implicitly, their claims remained ‘ ‘ alive ’ ’. The minutes of December 21, 1955 disclose the followingMr. Fischbach: * * * Finally, let me say this for the record. With respect to all those who have indicated an acceptance, the proceedings are hereby declared closed. With respect to those for whom the hearings may continue, depending on future advices on that score, the proceeding is hereby adjourned to 10:30 on Wednesday, January 18th ”. Reading the minutes of the hearings of June 15, September 25 and December 11, 1956, it is manifest that there was much confusion and inaction in respect of proceeding further on petitioners’ claims by reason of several lawsuits then pending in the courts. Nevertheless, it is clear that petitioners’ claims were still pending “alive” and unresolved. The minutes of the hearings on the three afore-stated dates clearly indicate they were adjourned hearings, held pursuant to notice to all interested parties by the respondent. The minutes of June 15, 1956, at page 2, indicate a continuing effort to have a rate “determined”. The language of the minutes of September 25, 1956 further indicates that petitioners’ claims remained alive. At page 15, the following appears: ‘ ‘ Mr. Savage: * * * Now, you have made a settlement which you contend you have made and you contend it is valid and now you have to go to Court to uphold the settlement and to see if that settlement is valid. You have severed the proceedings, the two proceedings before you, * * Continuing at page 15 is the following: “Now, how can you fairly state today that you don’t want to proceed with our hearings, where we have been severed from the others. * * * Now, those who wouldn’t settle have been obstructed continuously.” After *411 further discussion, we find at page 20: “ On this basis then I am going to adjourn the instant matter to November 28, 1956.” Then, at page 21:
‘ ‘ Mr. Savage: I just want to enter an objection to the adjournment for the reasons stated before in the record.
“ Mr. Weissberg: I want to join in the motion of the Corporation Counsel that hearings be held on wage rates for the period of December, or rather, after December 21,1955, as soon as an investigation has been completed and a report made ”.
The minutes of December 11,1956 disclose the following (p. 2 et seq.): “Mr. Buonora (for Corporation Counsel): * * * The instant proceeding is being held pursuant to adjournment. * * * Now to repeat, the present hearings are a continuance of the original hearings begun in June, 1955, and we have had a series of hearings since that time. There came a point during the interim when the Corporation Counsel on behalf of the City of New York, entered into a stipulated agreement with a great segment of the complainants. This agreement was translated, into a consent determination approved by the Comptroller, and which became generally the subject matter of a dispute between Mr. Savage representing a group of complainants who failed to acquiesce in such an agreement ’ ’. Continuing, Mr. Buonora discusses the intervening lawsuits and pending appeals. He then continues (p. 3): “It would be unfair to place the City in double jeopardy for the same period, and for that reason I ask that this proceeding be adjourned without date until such time as a final disposition is made by the highest court * * * that these proceedings which are a continuance of the original proceedings of June 23, 1955 be adjourned without date until a final disposition has been made by the Court of Appeals, * * * and I might add this: * * * that I consider the original complaints of these present proceedings still alive in the legal sense, * * *. Because of that, those live complaints being still in the nature of being alive, are to be disposed of subject to the final ruling by the court. ’’ Then, at pages 12-13, the following ensued: “Mr. Fischbaek: The best disposition of this case without prejudicing your rights further than you think we are — I am going to mark the case off the calendar ■with the opportunity to either side to restore, upon notice; if you give me 24 hours’ notice I will restore this case to the calendar. ’ ’
At the trial before me, petitioners further buttressed their contention and proof that their claim remained “ alive ” by the severed proceedings. Respondent’s witness Mr. Scotti admitted *412 that petitioners were parties to the severed proceedings and had a continuing “ live ” claim. This testimony is directly in point, as follows:
“ Q. It is a fact, Mr. Scotti, that there was a severance of the maintenance men proceeding at a hearing December 21, 1955? Is that not correct, sir? A. Yes.
“ Q. And the severed proceedings continued, did they not, sir? A. Yes, sir.
“ Q. Did a Mr. Alexander Pearlman attend at those severed proceedings or may I refresh yoiir recollection if you are in doubt?
“ Mr. Harold: With the Court’s permission, I will hand the witness three photostatic copies of the consecutive severed proceedings. They are part of respondent’s answer already marked in evidence.
“ A. Either Mr. Pearlman or a representative of his appeared at this hearing.
“ Q. And at those severed hearings, either Mr. Pearlman or his representative sought to have the Comptroller make a determined rate? Is that correct, sir? A. I assume that is what the hearings were held for.
‘‘ Q. Arid so, it is true in respect to the S. C. M. E. and Mr. Pearlman, those people that they represented were seeking to have a determined rate, is that correct, sir? A. That’s right, sir.
“ Q. And, in fact, you may remember that not only Mr. Pearl-man or his representative, but Mr. Trypuc and others of the S. C. M. E. attended such severed proceedings? A. I don’t recall now, but I assume that they attended. They were interested parties.
“ Q. Is it a fact, sir, and I am speaking now generally, that when a proceeding is concluded, a prevailing wage proceeding is concluded, that the claims then existing are considered dead as of that date? A. Yes.
“ Q. And it is the policy of the City, recognized by claimants in the field, that they then should file a new claim? Is that not correct? A. Yes.
“ Q. Unless they file a new claim, they will have a void or a blank period in regard to subsequent determination? A. That is true.
“ Q. Now, in respect to those parties who participated in the severed proceeding, as to them, the proceedings were not concluded? Is that correct, sir? A. That is true.
*413 “ Q. So that as to them, as an opposite of the same postulate, their claims continued to be valid? Is that correct, sir? A. That is true.”
As hereinbefore pointed out, the respondent, at the severed hearings of December 11,1956, marked the case off the calendar with the statement that either side had the opportunity to restore it upon 24 hours’ notice. The record establishes that each petitioner has not been successful in having a determined rate established in the severed proceedings, which were never restored to the Comptroller’s calendar. Each of the petitioners terminated the severed proceedings as to his claim by accepting the city’s check and executing a release in late 1956 or early 1957. Thus they had a valid claim in a pending severed proceeding until they terminated the proceeding as to them by accepting the check and executing a release. A valid claim, therefore, was in existence from December 21, 1955 to late 1956, or early 1957, and in each ease encompassed the period of nonpayment as indicated specifically in column 4 of the petition. The second claim, claim B, also provided for continuous coverage in the second proceeding. The release executed between late 1956 and early 1957, by its terms released the city only to December 21, 1955, and the checks received by petitioners only paid prevailing wages up to December 21, 1955. This was the same end date for each petitioner. So too, obviously, since the second determination was not made until August 22, 1957, the checks offered were only for retroactive wages to December 21,1955. I therefore conclude that the releases executed do not defeat the claim of petitioners.
As to timeliness of the article 78 proceeding, the second proceeding indicates the new rates were to run from December 21, 1955. The petition alleges in paragraph 13 thereof, and it is not controverted, that as of July, 1958, the city had prepared and offered its checks for the second proceeding. It was then and only then that petitioners first learned that the city was claiming that petitioners’ claim A was “dead”. Since the instant proceeding was instituted in August, 1958, it was therefore timely. The actions of Dawson and Kennedy against the Comptroller, which are referred to herein, and in which determinations of the appellate court were sought, were not determinative or relevant to the instant proceedings of these petitioners which were continued by the severed proceedings as to them. Petitioners’ claims remained “ live ” in these severed proceedings.
*414 In view of all of the aforesaid, it is my ultimate opinion and conclusion that petitioners’ application be sustained and that they be paid for the periods indicated which are the subject of their petition herein. This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act. Settle order accordingly.